**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| TAQUAN RASHIE GULLET-EL, <br> *Pro Se* <br><br>          Plaintiff, <br><br>     v. <br><br> UNITED STATES OF AMERICA, et al. <br><br>          Defendants. | Civ. Action No. 24-00521 <br> (EGS) |

**MEMORANDUM OPINION**

Plaintiff Taquan Rashie, also known as Taquan Rashie Gullet-el and gullet-el:taquan-rashe ("Mr. Rashie") initiated this action, *pro se*, on February 12, 2024. Pl.'s Compl., ECF No. 1.[1] Since then, he has flooded this Court's docket with thousands of pages of briefs and motions based on theories that courts have resoundingly rejected. *See* Dkt. in Civil No. 24-00521 (D.D.C.). This includes Mr. Rashie's Amended Complaint, *see* Am. Compl., ECF No. 30, which Defendants (the "government") now seek to dismiss, *see* Mot. to Dismiss, ECF No. 38. Mr. Rashie opposes the Motion to Dismiss. *See* Opp'n to Mot. to Dismiss, ECF No. 43. Upon consideration of the motion, the response thereto, the

---

[1] When citing electronic filings throughout this opinion, the Court cites to the ECF header page number, not the original page number of the filed document. Citations reference docket entries in this case, 24-cv-00521, unless otherwise specified.

applicable law, and the entire record, the government's Motion
to Dismiss is **GRANTED**.

## I.    Background

The Court recently described the background of this case
when it denied Mr. Rashie's Motion for Recusal. *See* Mem. Op.,
ECF No. 29. It will briefly summarize the key facts again here.

### A. Moorish Sovereign Citizens

Mr. Rashie claims that he is a

> Moorish American National[] under the consular
> jurisdiction of the Moorish Science Temple of
> America Consular Court (a Theocratic state)
> for the protection and enforcement of our and
> our people's treaty birthrights secured under
> the Treaty of Peace with Morocco of 1787/1836
> (signed at Meccanez; copy at Tangiers) between
> the United States of North America and
> Moroccan Empire, which is in full force and
> effect under Article 25 of the Treaty of Peace
> and Friendship of 1836, and the Constitution
> for the United States of North America.

Am. Compl., ECF No. 30 at 5; *see also id.* at 9 ("General
Executor has declared and continues to declare that he is a
Moorish American National . . . ."). His proclaimed status as a
"Moorish American National," who appears to align himself with
sovereign citizen beliefs, is the basis of his claims in this
Court, and those that have previously led to criminal and civil
actions against him.

Other courts have described the general beliefs of Moorish
Sovereign Citizens when considering cases based on similar legal

theories to Mr. Rashie's Amended Complaint. *See, e.g.*, *Bey v. Stumpf*, 825 F. Supp. 2d 537, 539 (D.N.J. 2011). For example, the United States District Court for the District of New Jersey described the foundations of Moorish Sovereign Citizenship and related ideologies:

> Two concepts, which may or may not operate as interrelated . . . [o]ne of these concepts underlies ethnic/religious identification movement of certain groups of individuals who refer to themselves as "Moors," while the other concept provides the basis for another movement of certain groups of individuals which frequently produces these individuals' denouncement of United States citizenship, self-declaration of other, imaginary "citizenship" and accompanying self-declaration of equally imaginary "diplomatic immunity."

*Id.* at 539. Although Moorish ethnic or religious convictions do not necessarily come with adherence to the sovereign citizenship movement,

> certain groups of individuals began merging these concepts by building on their alleged ancestry in ancient Moors . . . for the purposes of committing criminal offenses and/or initiating frivolous legal actions on the grounds of their self-granted 'diplomatic immunity,' which these individuals deduced either from their self-granted 'Moorish citizenship' and from their correspondingly-produced homemade 'Moorish' documents . . . or from a multitude of other, equally non-cognizable under the law, bases, which these individuals keep creating in order to support their allegations of 'diplomatic immunity.'

*Id.* at 542.

Additionally, the government cites to information from the Southern Poverty Law Center that classifies Moorish Sovereign Citizens to be an "extremist group" that "espouse an anti-government doctrine" and use "their status as members of a sovereign nation" to "justify refusing to pay taxes, buy auto insurance, register their vehicles and to defraud banks and other lending institutions." Mot. to Dismiss, ECF No. 38 at 3 (quoting Southern Poverty Law Center, *Moorish Sovereign Citizens*, *available at* https://www.splcenter.org/fighting-hate/extremist-files/group/moorish-sovereign-citizens (May 20, 2024)).

Some of the actions that Sovereign Citizens, including Moorish Sovereign Citizens, have taken are based on the

> 'Redemptionist' theory, which propounds that a person has a split personality: a real person and a fictional person called the 'strawman.' . . . Redemptionists claim that the government has power only over the strawman and not over the live person, who remains free [and, thus,] individuals can free themselves by filing UCC financing statements, thereby acquiring an interest in their strawman. Thereafter, [pursuant to this 'theory,'] the real person can demand that government officials pay enormous sums of money to use the strawman's name or, in the case of prisoners, keep him in custody.

*Bey*, 825 F. Supp. at 541 (quoting *Monroe v. Beard*, 536 F.3d 198, 203 & nn. 3 & 4 (3d Cir. 2008)) (alterations in original). Mr. Rashie's claims in this case are based on his perceived status

as a Moorish American National, or Moorish Sovereign Citizen, and the Redemptionist theory.

### B. Mr. Rashie's Claims

As this Court previously explained, Mr. Rashie filed a series of false liens against government officials that led to both his criminal prosecution and a civil action to nullify those false liens and enjoin him from filing more false documents. *See* Mem. Op., ECF No. 29. Mr. Rashie's criminal conviction was affirmed on appeal and the court granted summary judgment against him in the civil case, a decision which is pending on appeal. *See* Mem. Op. & Order, ECF No. 30 in 15-cv-00652 (D.D.C.) at 2–3;[2] J. & Sentencing, ECF No. 187 in 2:14-cr-00725 (C.D. Cal.);[3] Mot. to Dismiss, ECF No. 38 at 4. Mr. Rashie

---

[2] On April 2, 2024, Mr. Rashie filed both a Motion for Relief from Judgment in 15-cv-00652 (D.D.C.) and a Notice of Appeal to the United States Court of Appeals for the District of Columbia Circuit ("D.C. Circuit"). Mot. for Relief from J., ECF No. 33 in 15-cv-00652 (D.D.C.); Notice of Appeal, ECF No. 34 in 15-cv-00652 (D.D.C.). The D.C. Circuit held the appeal in abeyance pending resolution of the Motion for Relief from Judgment and directed the parties to file motions to govern future proceedings within 30 days of the district court's resolution of the Motion for Relief from Judgment. D.C. Cir. Order, ECF No. 36 in 15-cv-00652 (D.D.C.). On August 6, 2024, the Court denied Mr. Rashie's Motion for Relief from Judgment. Mem. Op., ECF No. 40 in 15-cv-00652 (D.D.C.). The D.C. Circuit denied some of Mr. Rashie's pending motions in his appeal but has not yet fully resolved it. *See* Order, ECF No. 2098959 in Case #24-5080 (D.C. Cir.); *see generally* 24-5080 (D.C. Cir.).
[3] The United States Court of Appeals for the Ninth Circuit has affirmed Mr. Rashie's conviction and sentence. Mem. & Order, ECF No. 241 in 2:14-cr-00725 (C.D. Cal.). Mr. Rashie has filed numerous other motions in this criminal case, including a

ostensibly brought this case as a "compulsory counterclaim" to the civil action brought against him in this Court. *See* Am. Compl., ECF No. 30 at 1 (styling his Amended Complaint as a "Compulsory Counterclaim for Constructive Trust, Equitable Accounting, Tracing, Disgorgement of Unjust Gains, Criminal Contempt by Military Commission, and for Damages Against Public Official Bond (in Defendants'/Respondents' Individual Capacity(ies)) and for Declaratory Relief and Injunctive Relief (in Defendants'/Respondents' Official Capacity(ies))," which he also claims to be an "Intervention Application Under Article 52 Geneva (IV) Convention of 1949 Under the Trading With The Enemy Act (TWEA) (50 U.S.C. §§ 4301 to 4341).")). Mr. Rashie's Amended Complaint is more than 500 pages, alleges 30 counts, and includes 19 exhibits. *See id.* All of his claims allege violations of the Trading With the Enemy Act ("TWEA"), 50 U.S.C. § 4301, and depend on his apparent Moorish Sovereign Citizenship and Redemptionist beliefs. *See id.* at 11.

Defendants filed their first Motion to Dismiss on May 30, 2024. *See* Mot. to Dismiss, ECF No. 20. In response, Mr. Rashie opposed the motion and sought to amend his Complaint. *See* Resp. to Mot. to Dismiss & Notice & Mot. to Amend Compl., ECF No. 22.

---

purported "Judicial Notice of Joinder to D.D.C. # 1:24-cv-00521-EGS for Criminal Contempt Proceedings for Abuse of Process and Violation of Discharge Injunction" on March 22, 2024. Def.'s Mot., ECF No. 332 in 2:14-cr-00725 (C.D. Cal.).

On November 13, 2024, the Court granted Mr. Rashie's Motion to Amend and denied Defendants' first Motion to Dismiss without prejudice. *See* Minute Order (Nov. 13, 2024). In its Order, the Court deemed the Amended Complaint to be filed as of November 13, 2024. *See id.*[4] But despite this order, Mr. Rashie proceeded to file what he refers to as his Amended Complaint on December 12, 2024. *See* Am. Compl., ECF No. 30.

The government did not file a renewed motion to dismiss or answer the Amended Complaint within the time permitted under Federal Rule of Civil Procedure 12. On January 7, 2025, however, the government filed a Motion to Extend Time to File Answer or Otherwise Respond to the Amended Complaint. *See* Mot. to Extend Time to File Answer or Otherwise Respond to Am. Compl., ECF No. 37. Within that motion, the government requested an extension of time, up to and including January 9, 2025, to respond to Mr. Rashie's Amended Complaint. *See id.* It argued that the "enlargement the United States seeks here can be granted under the excusable neglect standard." *See id.* at 2. The government also pointed out that a challenge to the Court's jurisdiction, which is one of the grounds for its Motion to Dismiss, cannot be

---

[4] Local Civil Rule 7(i) provides: "A motion for leave to file an amended pleading shall be accompanied by an original of the proposed pleading as amended. The amended pleading shall be deemed to have been filed and served by mail on the date on which the order granting the motion is entered." LCvR 7(i).

waived and can be made at any time. *See id.* at 1-2. The government filed its Motion to Dismiss on the same day. *See* Mot. to Dismiss, ECF No. 38. Mr. Rashie filed an opposition on February 5, 2025. *See* Opp'n to Mot. to Dismiss, ECF No. 43.[5]

## II.   Standards of Review

### A. Excusable Neglect

"When an act may or must be done within a specified time, the court may, for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). "Excusable neglect is an equitable concept that considers 'all relevant circumstances' surrounding the failure to act." *Cohen v. Board of Trustees of the Univ. of the Dist. of Columbia*, 819 F.3d 476, 479 (D.C. Cir. 2016) (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assoc., Ltd. P'ship* ("*Pioneer*"), 507 U.S. 380, 395 (1993)). Under this analysis, counsel need not be faultless, but there generally must be "some reasonable basis" for the delay. *See id.* (citations omitted). The Supreme Court has articulated four factors relevant to this analysis: "(1) the risk of prejudice to the other side; (2) the length of the delay and the potential for impact on judicial proceedings; (3) the reason for the delay and whether it was within counsel's reasonable

---

[5] The government has not filed a Reply.

control; and (4) whether counsel acted in good faith." *Id.*
(citing *Pioneer*, 507 U.S. at 395) (add'l citations omitted).

### B. Federal Rule of Civil Procedure 12(b)(1)

"Federal courts are courts of limited jurisdiction . . .
[and it] is to be presumed that a cause lies outside this
limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of
Am.*, 511 U.S. 375, 377 (1994); *Akinseye v. District of Columbia*,
339 F.3d 970, 971 (D.C. Cir. 2003). The plaintiff has the burden
to demonstrate that a court has subject matter jurisdiction. *See*
Fed. R. Civ. P. 12(b)(1); *Lujan v. Defenders of Wildlife*, 504
U.S. 555, 561 (1992); *Am. Farm Bureau v. Envtl. Prot. Agency*,
121 F. Supp. 2d 84, 90 (D.D.C. 2000) (plaintiff bears the burden
of proving subject matter jurisdiction by a preponderance of the
evidence); *see also Phoenix Herpetological Soc'y, Inc. v. United
States Fish & Wildlife Servs.*, Civ. No. 20-01459, 2021 WL
620193, at *3 (D.D.C. Feb. 17, 2021). '"It is axiomatic that
subject matter jurisdiction cannot be waived, and that courts
may raise the issue sua sponte." *NetworkIP, LLC v. Fed.
Commc'n's Comm'n*, 548 F.3d 116, 120 (D.C. Cir. 2008) (quoting
*Athens Cmty. Hosp. Inc. v. Schweiker*, 686 F.2d 989, 992 (D.C.
Cir. 1982))); Fed. R. Civ. P. 12(h)(3) ("If the court determines
at any time that it lacks subject-matter jurisdiction, the court
must dismiss the action.").

Courts may dismiss a complaint "on jurisdictional grounds when 'it is 'patently insubstantial,' presenting no federal question suitable for decision.'" *Tooley v. Napolitano*, 586 F.3d 1006, 1009 (D.C. Cir. 2009) (quoting *Best v. Kelly*, 39 F.3d 328, 330 (D.C. Cir. 1994)); *see also Williams v. Davis*, Civ. No. 22-02178, 2022 WL 3585650, at *1 (D.D.C. Aug. 22, 2022) (quoting *Hagans v. Lavine*, 415 U.S. 528, 536–37 (1974)) (alteration in original) ("It is well-settled that 'federal courts are without power to entertain claims otherwise within their jurisdiction if they are so attenuated and unsubstantial as to be absolutely devoid of merit, wholly insubstantial, [or] obviously frivolous.'"). "Claims are patently insubstantial if they are 'essentially fictitious,' for example, advancing 'bizarre conspiracy theories,' 'fantastic government manipulations of [one's] will or mind,' or some type of 'supernatural intervention.'" *Williams*, 2022 WL 3585650, at *1 (quoting *Best*, 39 F.3d at 330) (alteration in original).

### C. Federal Rule of Civil Procedure 12(b)(6)

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a complaint." *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). To survive a 12(b)(6) motion, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal* ("*Iqbal*"), 556 U.S.

662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly* ("*Twombly*"), 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw [a] reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The standard does not amount to a "probability requirement," but it does require more than a "sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted).

When evaluating a 12(b)(6) motion, the Court "may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [courts] may take judicial notice." *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997). Furthermore, the court "must accept as true all of the factual allegations contained in the complaint." *Atherton v. D.C. Off. of the Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009) (internal quotations omitted). The court must also give the plaintiff the "benefit of all inferences that can be derived from the facts alleged." *Id.* at 677 (internal quotations omitted). However, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). And "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are not

sufficient to survive a motion to dismiss. *Iqbal*, 556 U.S. at 678.

### D. Federal Rule of Civil Procedure 8

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). "Each allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). "Enforcing these rules is largely a matter for the trial court's discretion . . . Rule 41(b) authorizes the court to dismiss either a claim or an action because of the plaintiff's failure to comply with the Federal Rules 'or any order of the court,' Fed. R. Civ. P. 41(b)." *Ciralsky v. Central Intel. Agency*, 355 F.3d 661, 669 (D.C. Cir. 2004) (citing 5 WRIGHT & MILLER § 1217, at 175 & n.8 (2d ed. 1990)).

### III. Analysis

There are numerous reasons why Mr. Rashie's Amended Complaint must be dismissed. As explained below, excusable neglect exists for the government's delay in filing its renewed Motion to Dismiss, and the government's grounds for dismissal therein are meritorious. Even if there were no excusable neglect for the untimely Motion to Dismiss, the Court would still dismiss Mr. Rashie's Amended Complaint for lack of jurisdiction, a determination it could make *sua sponte*. The reasons why the Court lacks jurisdiction to hear Mr. Rashie's claims overlap

with the other grounds for dismissal. Therefore, after explaining why it finds that the government has shown excusable neglect, the Court will address both the jurisdictional and other reasons why it will dismiss this case.

### A. Excusable Neglect for Delay

The government's delay in filing its second Motion to Dismiss, which is now before the Court, was due to excusable neglect. Because Mr. Rashie's Amended Complaint was deemed filed on November 13, 2024, the government's response was due on November 27, 2024. As noted, the government did not file its current Motion to Dismiss until January 7, 2025, which is approximately 41 days late. During that delay, however, Mr. Rashie filed an Amended Complaint on December 12, 2024, despite the Court's November 13, 2024 Minute Order. *See* Am. Compl., ECF No. 30. Mr. Rashie also filed a Motion for Entry of Default on December 27, 2024, *see* Mot. for Entry of Default, ECF No. 33, to which the government filed an opposition on December 31, 2024, *see* Resp. to Mot. for Entry of Default, ECF No. 34. Mr. Rashie continued to file Motions to Take Judicial Notice during this time. *See* Mot. to Take Judicial Notice, ECF No. 31; Mot. to Take Judicial Notice, ECF No. 32.

In support of its excusable neglect argument, the government contends that the risk of prejudice from the extension to Mr. Rashie is low; the length of delay is slight;

the delay was reasonable under the circumstances; and counsel did not act in bad faith. *See* Mot. for Extension, ECF No. 37 at 2-3. Even though Mr. Rashie submitted a supposedly combined response to the government's Motion to Dismiss and Motion for Extension, it is difficult to decipher what if any parts of his response address whether there was excusable neglect for the government's delay. *See* Opp'n to Mot. to Dismiss, ECF No. 43.

Regardless of Mr. Rashie's apparent failure to dispute the government's argument, the Court agrees that the government has shown excusable neglect. The length of time for the government's delay, less than six weeks, was minimal and did not stop Mr. Rashie from continuing to vigorously litigate his case, something he has continued to do even after the government filed its Motion to Dismiss. *See*, Mot. to Strike, ECF No. 39; Mot. to Strike, ECF No. 41; Mot. to Compel, ECF No. 42; Mot. to Strike, ECF No. 45; Mot. for Sanctions, ECF No. 46; Mot. to Strike, ECF No. 48; Mot. to Strike, ECF No. 50; Mot. to Strike, ECF No. 52.

Nor did the delay inflict prejudice on Mr. Rashie. One of the reasons the government cites for its delay is that Mr. Rashie's "pleadings and motions are highly confusing, which led to the undersigned counsel's failure to realize if or when a responsive motion was due." Mot. for Extension, ECF No. 37. Even though this does not address the government's failure to comply with this Court's Minute Order, the Court finds compelling the

argument that the number, contents, and frequency of Mr. Rashie's briefs and motions make it difficult to decipher and address all his filings in a timely and thorough matter. The Court also agrees that nothing in this record indicates that the government has acted in bad faith in this case. Therefore, the government's Motion for Extension is **GRANTED** *nunc pro tunc* and the Motion to Dismiss is deemed timely filed.

### B. Failure to Allege Jurisdiction

Mr. Rashie has failed to plausibly allege that this Court has subject matter jurisdiction over his claims.

First, Mr. Rashie's assertion of diversity jurisdiction is unsupported. Mr. Rashie invokes the '"Diversity of Nationality/Citizenship' under Article III Section 2," but his only basis for diversity of jurisdiction appears to be his assertion of Moorish Sovereign Citizenship. *See* Am. Compl., ECF No. 30 at 11. Title 28 U.S.C. § 1332(a) allows federal courts to exercise jurisdiction over cases in which the parties' citizenship is diverse and the matter in controversy exceeds $75,000. *See* 28 U.S.C. § 1332(a). As the government points out, courts have repeatedly rejected Moorish Sovereign Citizen claims as "frivolous" and therefore this theory is no basis for diversity of citizenship. *See* Mot. to Dismiss, ECF No. 38 at 7 (citing, *e.g.*, *Bey v. Mun. Court*, Nos. 11-7343, 11-4351, 2012 WL 714575 (D.N.J. Mar. 5, 2012); *Bey v. White*, No. 17-cv-76, 2017

15

WL 934728, at *3 (D.S.C. Feb. 14, 2017)). Mr. Rashie cites no cases in which courts have recognized this a basis for diversity. His diversity jurisdiction argument fails.

Second, Mr. Rashie has not sufficiently pleaded federal question jurisdiction. The only conceivable basis for federal question jurisdiction is violations of the TWEA.[6] Congress passed the TWEA to permit allied individuals and non-enemies to recover property vested within the United States during World War I and World War II. *See Schilling v. Rogers*, 363 U.S. 666, 671-74 (1960); *Jackson v. Irving Trust Co.*, 311 U.S. 494, 500 ("The United States had expressly consented in Section 9(a) of the Trading with the Enemy Act that suits might be brought by a non-enemy claimant to have his claim against an enemy debtor satisfied out of the latter's property held by the Alien Property Custodian."). The only support for TWEA violations in Mr. Rashie's Amended Complaint are his own far-fetched assertions. *See generally* Am. Compl., ECF No. 30.

Although difficult to decipher and conclusory, Mr. Rashie appears to claim that the government violated the TWEA by holding him accountable in criminal and civil proceedings for

---

[6] Mr. Rashie also invokes international agreements including the Geneva Convention, but these do not appear to be the basis for the claims in his Amended Complaint, nor does he provide any comprehensible allegations for violations of these agreements. *See* Am. Compl., ECF No. 30.

filing false liens against government officials and enjoining him from committing similar actions. *See* Am. Compl., ECF No. 30 at 13. For example, Mr. Rashie asserts:

> General Executor's[,] and General Executor's associates' constitutionally protected Treaty Birthright secured copyright/trademark/ tradename/sign (signal) have been used continuously by General Executor and General Executor's associates and General Executor's ancestors since time immemorial, in intrastate, interstate, and foreign commerce.

*Id.*; *see also* Opp'n to Mot. to Dismiss, ECF No. 43 at 12 (claiming that Mr. Rashie "did aver and does aver that Defendants' / Respondents' willful, wrongful, and wanton cause of injury to General Executor by Unlawful 14th Amendment Forced Conscription Fraud, Unlawful Annexation, Unlawful Taxation, and Unlawful Monetization in violation of the Law of War UCMJ Article 18 (18 U.S.C. § 2441)"). These assertions are based on Moorish Sovereign Citizen and Redemptionist theories that courts have repeatedly rejected in general, *see, e.g.*, *Bey*, 825 F. Supp. 2d at 545-56; and specifically as relates to Mr. Rashie, *see, e.g.*, Mem. Op. & Order, ECF No. 30 in 15-cv-00652 (D.D.C.); J. & Sentencing, ECF No. 187 in 2:14-cr-00725 (C.D. Cal.); Mot. to Dismiss, ECF No. 38 at 2 (discussing the federal court jurisdictions in which Mr. Rashie has been enjoined from bringing suits without obtaining prior approval from the court). And Mr. Rashie points to no cases in which any court has held

that these arguments were meritorious. *See* Opp'n to Mot. to
Dismiss, ECF No. 43. Even taking the facts and inferences in the
light most favorable to Mr. Rashie, his claims are "patently
insubstantial" and present "no federal question suitable for
decision." *See Tooley*, 586 F.3d at 1009. Mr. Rashie has not
plausibly alleged federal question jurisdiction for his claims.
Because Mr. Rashie failed to plausibly allege any basis for
subject matter jurisdiction, his Amended Complaint is dismissed
pursuant to Federal Rule of Civil Procedure 12(b)(1).

### C. Failure to State a Claim

Even if Mr. Rashie's Amended Complaint presented any basis
for jurisdiction, which it does not, he fails to state a claim
upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6).
Mr. Rashie's Amended Complaint is riddled with nonsensical
recitals and devoid of any specific facts to support his claims.
*See* Am. Compl., ECF No. 30. Indeed, there are hardly any 'facts'
to construe in the light most favorable to him, even considering
the less stringent standard to which he is held as a *pro se*
plaintiff. *See id.* The few 'facts' that Mr. Rashie alleges to
support his claims under the TWEA depend entirely on his Moorish
Sovereign Citizen and Redemptionist assertions, which, as
discussed above, *see infra* Part III.B; are meritless.[7] Moreover,

_____

[7] To be clear, the Court does not fault Mr. Rashie for holding
whatever beliefs he has. The issue here is that Mr. Rashie

Mr. Rashie does not even provide the elements for a TWEA violation, let alone explain why he meets them, and relies only on his self-proclaimed bases for egregious unlawful conduct. *Contra Iqbal*, 556 U.S. at 678. Because Mr. Rashie's Amended Complaint only consists of conclusory, implausible, and widely rejected allegations, he fails to state a claim upon which relief can be granted and his Amended Complaint is also dismissed under Rule 12(b)(6).

### D. Failure to Plead a Short and Plain Statement

Finally, Mr. Rashie fails to plead a short and plain statement of his entitlement to relief. As noted, Mr. Rashie's Amended Complaint is neither short nor plain at over 500 pages in total, including a nearly 100-page single-spaced Amended Complaint with over 400 pages of exhibits. *See* Am. Compl., ECF No. 30. In addition to the length, Mr. Rashie's Amended Complaint repeats the same confusingly worded assertions throughout that are conclusory and based on nothing more than his debunked theories. *See id.* Mr. Rashie fails to effectively provide notice of his claims. *See id.* Therefore, dismissal is also warranted under Federal Rule of Civil Procedure 41(b) for

---

previously and in this current action has asserted these beliefs in an attempt to gain vast amounts of money from the government that he was not owed and seek relief under an alternative and fantastical system of law that does not exist.

failing to comply with Federal Rule of Civil Procedure 8. *See Ciralsky*, 355 F.3d at 669; *Spence v. Dep't of Veterans Affairs*, 109 F.4th 531, 542 (D.C. Cir. 2024) (holding that "[t]he district court did not abuse its discretion" in dismissing a count of a complaint that was "neither short nor plain").

## IV.  Other Motions

Mr. Rashie has filed dozens of other motions, totaling thousands of pages, which are largely based on the same unfounded Moorish Sovereign Citizenship and Redemptionist theories that comprise his Amended Complaint. These include mostly motions to take judicial notice, to strike documents that the government has filed, for default, sanctions, and discovery. *See e.g.*, Dkt. in Case 24-cv-521. Because the Court dismisses Mr. Rashie's Amended Complaint, these pending motions are denied as moot. *See, e.g.*, *United States v. Sanchez-Gomez*, 584 U.S. 381, 385-86 (2018) (quoting *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 81 (2013) ("A case that becomes moot at any point during the proceedings is 'no longer a 'Case' or 'Controversy' for purposes of Article III,' and is outside the jurisdiction of the federal courts.").

**V.    Conclusion**

For the reasons stated above, the government's Motion for Extension, ECF No. 37, is **GRANTED**; its Motion to Dismiss, ECF No. 38, is **GRANTED**; and all other pending motions filed by Mr. Rashie are **DENIED AS MOOT**. An Order accompanies this Memorandum Opinion.

**SO ORDERED.**

**Signed:    Emmet G. Sullivan**
                **United States District Judge**
                **March 10, 2025**